UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

---

In re

JAMES L. BORK and
MICHELLE M. BORK,

      Debtors.

Case No. 07-27105

Chapter 7

---

MEMORANDUM DECISION[1] ON TRUSTEE'S OBJECTION TO EXEMPTION

---

This matter came before the court on the chapter 7 trustee's objection to the debtors' exemption of life insurance policies with cash surrender values totaling $90,027.00. The debtors opposed the objection and the parties filed briefs explaining their respective positions. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B), and the court has jurisdiction under 28 U.S.C. § 1334. This decision constitutes the court's findings of facts and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

ISSUE

When loans taken out on life insurance policies more than 24 months before the filing of the bankruptcy petition are repaid less than 24 months before the filing, does this constitute "funding," bringing the debtors within the exemption limitation of section 815.18(3)(f)3.b, Wis. Stat.?

BACKGROUND

On September 11, 2007, James and Michelle Bork filed for chapter 7 bankruptcy. At the time of filing, they owned three different life insurance policies issued to them in 1966 and 1984.

---

[1] The court thanks Michael Keepman, a second-year Marquette University Law School extern, for his assistance with research relating to this decision.

At some time during the course of owning the policies, and more than 24 months before filing this case, the Borks took out substantial loans from the cash value of those policies.

Within 24 months prior to filing, the debtors sold nonexempt assets, amounting to $68,820.00, and repaid loans borrowed from the three policies. The funds came from the following sources: (1) $7,500.00 from their 2006 income tax refund; (2) $25,320 from the sale in April 2007 of a one-half interest in 35 acres of wooded recreation land; (3) $11,000 from a loan from NorthShore Bank, pledging their Ford Expedition, which was previously free and clear of liens; and (4) a loan of $25,000.00 in July 2007 from their daughter and son-in-law secured by a mortgage on real estate. All transactions and payments on the life insurance loans were accomplished prepetition.

The debtors claim their exemptions totaling $90,027.00 in life insurance policies pursuant to section 815.18(3)(f)2, Wis. Stat. There is a dollar limit of $150,000 for the cash value of life insurance under that subsection. The chapter 7 trustee objected to the exemption, relying on section 815.18(3)(f)3.b, Wis. Stat., which states:

> If the life insurance or annuity contract was issued at least 24 months but funded less than 24 months before the applicable date, the exemption under this paragraph is limited to the value of the contract the day before the first funding that occurred less than 24 months before the applicable date and the lesser of either the difference between the value of the contract the day before the first funding that occurred less than 24 months before the applicable date and the value of the contract on the applicable date or $4000.

Wis. Stat. § 815.18(3)(f)3.b. Essentially, the trustee contends the debtors' repayment of the loans for the life insurance policies constituted a "funding" of the policy. As a result, the trustee believes the debtors are restricted by the exemption limitation in section 815.18(3)(f)3.b because the funding occurred within the 24 month period prior to the debtors' bankruptcy filing. The

2

debtors' position is that only premium payments constitute "funding," and any reduction in the amount of their exemption should be limited to these payments. It is undisputed that had the cash value been fully funded more than 24 months before filing, the limit of the exemption would have been $150,000. Wis. Stat. § 815.18(3)(f)2.

In his brief, the trustee cites *In re Summers*, 85 B.R. 121 (Bank. D. Or. 1988), which held that the repayment of a life insurance policy loan is a replacement of premiums. In *Summers*, the bankruptcy court reasoned:

> If the insured elects to repay the "policy loan", such repayment constitutes a dollar for dollar increase in the reserve value (cash surrender value or loan value) of the policy which is normally established by the payment of premiums. Accordingly, for the purpose of applying subsection 4, this court concludes that the repayment of a life insurance policy loan constitutes the payment of premiums.

*Id*. at 125. Since repayment of a life insurance policy constitutes payment of premiums and payment of premiums constitutes funding, so the trustee's argument goes, the repayment of a loan taken against previously paid premiums must also constitute funding.

The issue in *Summers* was not quite the same as the present issue. Critical to the *Summers* holding was the interpretation of an Oregon exception to exemption statute which states, "[s]ubject to the statute of limitations, the amount of any premiums paid in fraud of creditors for such insurance, with interest thereon, shall inure to their benefit from the proceeds of the policy." Or. Rev. Stat. § 743.099(4) (current version at Or. Rev. Stat. § 743.046(4) (2007)). The *Summers* court, as mentioned above, limited its holding that the repayment of a life insurance policy loan constituted the payment of premiums only "for the purpose of applying subsection 4." *Summers*, 85 B.R. at 125.

The parties focus on premiums misses the mark. Section 815.18(3)(f)3.b, Wis. Stat., uses

3

the term "funding," which is broader than premiums mentioned in the Oregon statute, and it is a term widely understood in the insurance industry and elsewhere. Had the legislature meant to limit the exemption statute with respect to premium payments, it probably would have done so. The statute also mentions nothing of fraud, but merely indicates that the exemption is limited where the policy was funded less than 24 months before the applicable date.

The trustee points out the Wisconsin exemption statute "severely limits the amount of value in those policies which may be claimed as exempt within the two-year period prior to claiming of the exemption to eliminate the parking of money as a preplanning mechanism." (Brief in Support of Trustee's Objection to Exemption, p. 5). A plain reading of the statute certainly suggests the Wisconsin Legislature intended when enacting section 815.18(3)(f)3.b, Wis. Stat., to prevent debtors in financial distress from unfairly avoiding their obligations to creditors. It also used a broad term in expressing its limitation, not a narrow term such as premiums, to limit how policyholders might avoid paying their creditors.

In the absence of any real legislative history, however, it is difficult to ascertain with precision what "funded" means in the context of section 815.18(3)(f)3.b, Wis. Stat., and how the term could be used to achieve the Wisconsin Legislature's apparent goal. One alternative is the Wisconsin Legislature sought to limit the prepayment of premiums. In those instances, and unlike the present case, the prepaid premiums would represent premiums which would have been paid in the future, but if retained, could be recovered by creditors. In the present case, however, the debtors' repayment of loans on the life insurance policies represented premiums which were paid decades before the applicable date. Had these "repaid" premiums never been borrowed against, they would not have been subject to execution by the creditors. The term "funded" can

4

be applied to both of these avoidance mechanisms, and probably others as well.

The "funding" limitation applies only to a reasonable period of time before recovery by creditors of the debtor's nest egg is likely. If funding has taken place more than two years before insolvency or involuntary actions by creditors to collect, it is reasonable to assume that the funding was unrelated to keeping assets free of the actions of creditors. According to the Supreme Court of Wisconsin "where [statutory] language is capable of more than one interpretation, it must be read in a sense which harmonizes with the subject-matter and the general purpose and object of the statute." *Julius v. Druckrey*, 254 N.W. 358, 361 (Wis. 1934). The term "funded" is capable of more than one interpretation, such as the prepayment of premiums or the repayment of policy loans. Therefore, according to *Julius*, "funded" must be read is a sense which harmonizes with the purpose of the statute. The substantial increase in value, derived in this case from nonexempt sources close to a bankruptcy filing, might maximize the debtors' exemption, but it would be to the substantial disadvantage of creditors. On the other hand, to the extent the cash value in the debtors' policies accrued before this time period, it would fall within the more generous provisions of section 815.18(3)(f)2, Wis. Stat. Therefore, the trustee's interpretation of "funded" is consistent with the apparent purpose of section 815.18(3)(f)3.b, Wis. Stat., of allowing legitimately acquired exemptions while preserving creditors' rights to funds shifted in contemplation of possible recovery by creditors. As noted previously, no fraudulent intent on the part of the debtors is necessary.

The debtors are correct in their assertion that Wisconsin courts have liberally construed exemption statutes in favor of the debtor. *E.g.*, *Opitz v. Brawley*, 102 N.W.2d 117 (Wis. 1960) (holding that tools of business did not exclude from exemption a library used in debtor's

5

occupation); *Matter of Woods*, 59 B.R. 221 (Bankr. W.D. Wis. 1986) (holding that "savings and investment plan" is a "retirement plan" within the meaning of the exemption statute); *In re Jones*, 97 F. 773 (E.D. Wis. 1899) (allowing debtor to exempt a Masonic uniform, although he did not wear it as ordinary and usual dress, but for special occasions only). Furthermore, section 815.18(1), Wis. Stat., states:

> This section shall be construed to secure its full benefit to debtors and to advance the humane purpose of preserving to debtors and their dependents the means of obtaining a livelihood, the enjoyment of property necessary to sustain life and the opportunity to avoid becoming public charges.

Wis. Stat. § 815.18(1). If a debtor is entitled to the full benefit of the exemption laws, it follows that a debtor can take full advantage of the exemptions by following it. To narrow the meaning of the term "funded" to the disadvantage of debtors in cases where the debtors are able to make full use of other exemptions, such as for retirement under section 815.18(3)(j), Wis. Stat., is arguably at odds with the inherent intent behind the language in section 815.18(1), Wis. Stat. Nevertheless, this court is not persuaded that limiting transfers to exempt life insurance policies within a reasonable period of time is at all contrary to the stated intent of the legislature in enacting exemption statutes.

In support of their claim for the full exemption of their policies, the debtors further argue that repayment of loans does not constitute payment of premiums based on the language in one of the policies which states "[l]oan repayments should be identified as repayments so that they will not be applied as premium payments." (Policy No. 06296310, dated July 20, 1984, Exhibit to Debtors' Response to Trustee's Brief). However, as the debtors point out, the only time repayments are treated as premium payments is when the premiums are behind or where the

6

policy owner does not identify the repayment as a loan repayment. Thus, this is a bookkeeping measure ensuring that in the absence of identification, payments made to the insurance company operate as premium payments in order to keep the policy up to date. And it is "funding" that is relevant; not merely premium payments.

The debtors finally argue that the nature of the loans taken against the policies created a true creditor/debtor relationship between themselves and the insurance company. As a result, the debtors contend the repayments constituted satisfaction on an obligation for a debt and not the payment of premiums which the trustee argues was "funding." The debtors' reliance on the existence of clauses contained within the policy, including those for penalties, taxes, interest, and the allowance of payment over a period of time, as a basis for this argument is highly questionable. The trustee persuasively counters based on specific legislative history which states that in "the definition of 'debt' and the definition of 'claim' on which it is based, proposed 11 U.S.C. 101(4), does not include a transaction such as a policy loan on an insurance policy . . . [because] the debtor is not liable to the insurance company for repayment." 95th Cong., 5 U.S. Code Cong. & Admin. News 5809 (1978). The insurance company can merely offset against monies due when the policy is paid to the owner or beneficiary because of the surrender of the policy or payment because of death. *Id*. It should also be noted that if, as the debtors contend, the loan created a true creditor/debtor relationship, then any repayments made between June 13, 2007, and September 11, 2007, could be avoided by the trustee as a preference (approximately $8800).

For the reasons stated above, the trustee's objection to the debtors' claim of exemption is sustained. The debtors' exemption of the value of contracts of life insurance policies is limited

7

by section 815.18(3)(f)3.b, Wis. Stat., with respect to funding any increase in such value that took place within 24 months of filing. A separate order consistent with this decision will be entered.

May 5, 2008

                          Margaret Dee McGarity
                          Chief Judge, U.S. Bankruptcy Court